## German American Bank *versus* Auth.

|87|419|
|139|602|

1. The bond of a bank messenger conditioned that it should be his duty "to account for and pay over all moneys that may come into or pass through his hands as such messenger, and that he shall in all things conduct himself honestly and faithfully as such messenger." *Held*, that the sureties on this bond were liable for moneys stolen from the bank by the messenger, whether he was acting within the scope of his employment or not, as the robbery was a breach of the condition to "conduct himself honestly and faithfully."

2. It was not negligence to intrust such a messenger with the keys of the vault, and the combination of the safe of the bank.

October 18th 1878.　Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county* : Of October and November Term 1878, No. 87.

Debt on a bond brought by the German American Bank, for use of C. Seibert, assignee, against John C. Auth, George A. Bannantine and Michael Ward.

Auth having been appointed messenger of the bank, gave to it his bond in the sum of $10,000, with Bannantine and Ward as sureties, conditioned as follows :

"Now, if the said John C. Auth shall and do well and truly, during any and all times hereafter, so long as he shall continue to hold the office of such messenger (under this or any future election), account for and pay over any and all moneys that may come into, or pass through, his hands as such messenger—and shall, moreover, attend to all the duties appertaining to said position, and perform the same to the best of his ability, and shall in all things conduct himself honestly and faithfully as such messenger, without any fraud or further delay, then this obligation to be void, otherwise to be and remain in full force and virtue."

At the trial it appeared from the testimony of Seibert, the cashier, that the bank intrusted Auth with the combination of the safe-lock ; that on Friday the 28th of May 1875, the cashier had counted the money in the bank, and placed it in a tin box, which was placed in the safe by either the cashier or the messenger ; that on Saturday the 29th, being a holiday, the bank was not opened, and remained closed until Monday, when it was discovered that about $3000 had been taken from the safe.　The door of the bank and the safe were both locked, and everything in the bank was as it was left on Friday.　It was found also that the messenger had

absconded.    The officers of the bank consisted of a president, cashier and the messenger.    No night watchman was employed.    Nothing was heard of Auth after his departure by the bank's officers.

The plaintiff having shown the above facts and rested, the defendants moved for a nonsuit, "because the evidence of the plaintiff shows that if the money was taken by John C. Auth at all, it was taken from the safe, and in consequence of his having the combination of the safe, and not in his capacity as messenger; and that there is no evidence that it is within the scope of the employment of a messenger that he should have the combination of the safe and access thereto."

The court, Kirkpatrick, J., granted the nonsuit, and the court in banc, having subsequently refused to take it off, the plaintiff took this writ and assigned this action for error.

*J. Ludewig Koethen* and *Slagle & Wiley*, for plaintiff in error. —In granting the nonsuit the court assumed, as matter of law, that the possession of the combination by Auth was the means whereby the theft was perpetrated.    Further, that it was no part of the duty of the messenger to have possession of the keys and access to the safe.    Both of these assumptions were clearly erroneous.

But admitting that the money was taken when he was not in the performance of duty as messenger, would the bank not be liable, nevertheless?    By reason of his employment as messenger he has access to the bank building; he comes to be regarded as a part of the establishment, and, therefore, allowed to pass back and forth without the observation which would be given to a stranger.    It would be a narrow construction of the bond which would limit the liability to thefts committed of money intrusted to him to carry to and from other banks, and not to include the theft of money which he only could have the opportunity to commit by reason of his employment as messenger.

*James P. Sterrett, J. M. Kennedy,* and *J. C. Doty,* for defendants in error.—Auth had been elected messenger of the bank.    The obligation was to secure the bank for moneys which might come into his hands as messenger.    If he conducted himself honestly and faithfully as messenger he fulfilled the condition of the bond.

The rights of the parties must be determined by the condition of the bond.    A surety cannot be held liable beyond the terms of his obligation : Commonwealth *v.* Simonton, 1 Wright 310 : Building Association *v.* Benson, 2 W. N. C. 541.    Auth had the keys of the bank and the combination of the safe.    He left home between ten and eleven o'clock on the night of Sunday May 30th 1875. He must have opened the bank, unlocked the vault and safe and taken the money at night.    He was enabled to do this, because the bank allowed him to carry the keys and have the combination of

the safe. By so doing, the bank assumed the risk itself. Auth's sureties are not answerable for the loss. In the absence of evidence it cannot be customary to accord to messengers such extraordinary privileges.

Mr. Justice GORDON delivered the opinion of the court, October 28th 1878.

John C. Auth, the principal in the bond in suit, was messenger for the German American Bank, and as such was, from time to time, trusted to handle the moneys of that institution. On the 28th day of May 1875, according to the statement of Charles Seibert, the cashier, some three thousand and sixty-six dollars were placed in a tin box or till, used for such purpose, and, as he thinks, was delivered to Auth to be put into the safe. This was on Friday evening; the bank-vault and safe were not opened until the next Monday morning, but when opened, it was found that the above-mentioned sum of money was missing. In the meantime, Auth had eloped. There is not much doubt, if the testimony is to be credited, but that he stole this money; certainly the evidence is sufficient to justify a jury in so finding, especially since, in addition to what has been above stated, it was in proof that he had in his possession duplicate keys of the bank and vault, and had also knowledge of the combination necessary to open the safe-lock. The court, however, on motion of the defendants, sureties of Auth, nonsuited the plaintiff, for the reasons following, viz.: because the evidence of the plaintiff showed that if the money was taken by John C. Auth at all, it was taken from the safe, and in consequence of his having the combination of the safe-lock, and not in his capacity as messenger; that there was no evidence " that it was within the scope of the duties of a messenger to have the combination of the safe and access thereto."

From this action of the court we feel obliged to dissent, and as a reason for so doing, it might be sufficient to call attention to the fact, that whether Auth's duties as a messenger required that he should or should not be intrusted with the bank-keys, it certainly was his duty, as a bank employee, to act honestly. Granting, therefore, that the cashier acted negligently in committing to him the combination, he did not the less violate his duty in stealing the money of the bank.

It is not necessary, however, to look beyond the face of the bond itself, in order to discover the incorrectness of the court's ruling. The bond recites that it shall be the duty of John C. Auth to account for and pay over all moneys "that may come into or pass through his hands as such messenger, and that he shall in all things conduct himself honestly and faithfully as such messenger." Here are two things made obvious: (1) he is to be intrusted with the funds of the bank; (2) he is to be honest and faithful in the exe-

[German American Bank *v.* Auth.]

cution of the trust thus confided to him. Thus it is, that without a discussion of the peculiar duties of a messenger, as defined by dictionaries, the bond itself clearly indicates what the duties of John C. Auth were, and how those duties were to be performed. And if, now, John C. Auth did act honestly and faithfully with reference to the funds of this bank, which passed through his hands, then is the thief an honest man, and then, also, is it true that the condition of the bond remains unbroken.

But what, after all, was the great impropriety of intrusting to Auth the combination of the safe-lock? It must needs, in order to avoid accident, be committed to some one or more persons, and who more proper than one who had the handling of the bank funds, and who was held in a heavy bond to act honestly? Besides, if he was to be intrusted with the moneys of the bank, why not with the place in which those moneys were to be kept?

Be this, however, as it may, the whole matter is summed up in this: Auth availed himself of his position in the bank to rob it, and but for that position he could not have accomplished his purpose. The loss to the plaintiff resulted from the abuse of powers which he, Auth, had acquired as its messenger; and so, whether he got at this money by fraud and craft, by picking or breaking the locks, or through the confidence placed in him by the cashier, is of no moment, since, in either case, he violated his duty as a subordinate officer or servant; he was not an honest and faithful messenger, and therefore the condition of his bond was broken.

The judgment is reversed, and a *venire facias de novo* is awarded.